**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

LARRY EUGENE WHITLOCK,

        *Plaintiff–Petitioner*,

    v.

U.S. DEPARTMENT OF HOMELAND
SECURITY *et al.*,

        *Defendants–Respondents.*

No. 21-cv-807 (DLF)

---

**MEMORANDUM OPINION**

Larry Eugene Whitlock brings this suit—a petition for a writ of mandamus and a complaint under the Administrative Procedures Act (APA)—to compel the U.S. Department of Homeland Security (DHS) and others to process his foreign fiancée's visa application. *See generally* Compl., Dkt. 1.  Before the Court is the defendants-respondents' motion to dismiss under the Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  *See* Defs.'-Resp'ts' Mem. in Supp. of Mot. to Dismiss at 1, Dkt. 5-1.  For the reasons that follow, the Court will grant the motion.

## I.    BACKGROUND[1]

### A.  Statutory Framework

If a U.S. citizen wishes to bring a foreign fiancée to the United States to marry her, the citizen, in conjunction with his fiancée, must petition the Department of State for a K-1

---

[1] When deciding a Rule 12(b)(6) motion, the court may consider only the complaint itself, documents attached to the complaint, documents incorporated by reference in the complaint, and judicially noticeable materials.  *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).  At this motion-to-dismiss stage, the court may take judicial notice of publicly available information on official government websites.  *See* Fed. R. Evid. 201(b) ("The court

nonimmigrant visa, commonly known as a fiancée visa.  *See Visas for Fiancé(e)s of U.S.*

*Citizens*, U.S. Citizenship & Immigr. Servs., https://www.uscis.gov/family/family-of-us-citizens/

visas-for-fiancees-of-us-citizens (last updated Mar. 23, 2018).  Obtaining a fiancée visa takes

several steps, the first of which begins with U.S. Citizenship and Immigration Services (USCIS),

an agency within DHS.  *Id.* (under *Process for Bringing your Fiancé(e) to the United States*, *Step*

*1: Petition for Fiancé(e) – USCIS*).  DHS requires the citizen to file Form I-129F, Petition for

Alien Fiancé(e), on behalf of the fiancée.  *Id.*  Once DHS approves the form, it forwards the form

to the National Visa Center, the State Department's visa-processing center.  *Id.*; *Nonimmigrant*

*Visa for a Fianc(é)e (K-1)*, Bureau of Consular Affs., U.S. Dep't of State,

https://travel.state.gov/content/travel/en/us-visas/immigrate/family-immigration/nonimmigrant-

visa-for-a-fiance-k-1.html (last visited Jan. 26, 2022).  The State Department then requires both

the citizen–petitioner and the fiancée–applicant to submit "fees, forms, and supporting

documents."  *Immigrant Visa Process*, Bureau of Consular Affs., U.S. Dep't of State,

https://travel.state.gov/content/travel/en/us-visas/immigrate/the-immigrant-visa-process/step-1-

submit-a-petition/step-2-begin-nvc-processing.html (last visited Jan. 26, 2022) (under *Step 2*:

*NVC Processing*).  The main form the petitioner and applicant must submit to the State

Department is Form DS-160, an online application for a fiancé(e) visa.  *Nonimmigrant Visa for a*

*Fianc(é)e (K-1)*, Bureau of Consular Affs., U.S. Dep't of State,

https://travel.state.gov/content/travel/en/us-visas/immigrate/family-immigration/nonimmigrant-

visa-for-a-fiance-k-1.html (last visited Jan. 26, 2022).  Based on that form, the State Department

---

may judicially notice a fact that is not subject to reasonable dispute because it . . . can be
accurately and readily determined from sources whose accuracy cannot reasonably be
questioned."); *see also Cannon v. District of Columbia*, 717 F.3d 200, 205 n.2 (D.C. Cir. 2013)
(taking judicial notice of an official government website).

either approves or denies an interview for the applicant. *Immigrant Visa Process*, Bureau of

Consular Affs., U.S. Dep't of State, https://travel.state.gov/content/travel/en/us-visas/immigrate/

the-immigrant-visa-process/step-1-submit-a-petition/step-2-begin-nvc-processing.html (last

visited Jan. 26, 2022) (under *Step 2*: *NVC Processing*). If the State Department approves an

interview, it generally forwards the application to the U.S. Embassy where the applicant lives.

*See Visas for Fiancé(e)s of U.S. Citizens*, U.S. Citizenship & Immigr. Servs., https://www.uscis.

gov/family/family-of-us-citizens/visas-for-fiancees-of-us-citizens (last updated Mar. 23, 2018)

(under *Process for Bringing your Fiancé(e) to the United States*, *Step 2: Visa Application -*

*DOS*). There, the Embassy—"based on the availability of appointments offered"—schedules an

interview appointment. *Immigrant Visa Process*, Bureau of Consular Affs., U.S. Dep't of State,

https://travel.state.gov/content/travel/en/us-visas/immigrate/the-immigrant-visa-process/step-1-

submit-a-petition/step-2-begin-nvc-processing.html (last visited Jan. 26, 2022) (under *Step 2*:

*NVC Processing*). The applicant presents all required documentation to the consular officer who

decides whether the applicant qualifies for a fiancé(e) visa. *Id.* (under *Step 11*: *Applicant*

*Interview*). If so, the applicant has six months to enter the United States, *id.* (under *Step 12*: *After*

*the Interview*), where, at a port of entry, a Customs and Border Patrol officer "will make the

ultimate decision about whether to admit [the] fiancé(e)," *Visas for Fiancé(e)s of U.S. Citizens*,

U.S. Citizenship & Immigr. Servs., https://www.uscis.gov/family/family-of-us-citizens/visas-for-

fiancees-of-us-citizens (last updated Mar. 23, 2018) (under *Process for Bringing your Fiancé(e)*

*to the United States*, *Step 3: Inspection at a Port of Entry - CBP*). If the fiancée–applicant enters

the country, she and the citizen must wed within ninety days, and if they do, she may apply for

lawful permanent residency. *Id.*

### B.  Factual Background

Whitlock filed the initial form for a fiancée visa, Form I-129F, with DHS in February 2020 so that his Filipino fiancée, Dannalyn Ferrer Sevilla, could immigrate to the United States,. *See* Pl.'s Opp'n to Defs.' Mot. to Dismiss at 3, Dkt. 7; Compl. ¶¶ 14, 16–17.  Before DHS processed Whitlock's form, though, the world changed: The first wave of COVID-19 crippled global markets and, more relevant here, suspended many government functions.  *See* Defs.'-Resp'ts' Mem. at 3–4.  DHS approved Whitlock's form in August 2020, *see* Compl. ¶ 19, and forwarded it to the State Department thereafter, *see id.* ¶ 20; *see also* Defs.'-Resp'ts' Mem. at 2. The State Department, however, had suspended visa processing in March 2020.  *See Visa Update: Phased Resumption of Routine Visa Services*, U.S. Embassy in the Phil. (Sept. 3, 2020), https://ph.usembassy.gov/visa-update-phased-resumption-of-routine-visa-services-3/ ("The Department of State suspended routine visa services worldwide in March 2020 due to the COVID-19 pandemic.").  The Department resumed processing in July 2020, but only "[a]s post-specific conditions improve[d]."  *See Visa Update: Phased Resumption of Visa Services*, U.S. Embassy in the Phil. (July 31, 2020), *https://ph.usembassy.gov/visa-update-phased-resumption-of-routine-visa-services/* ("As of July 27, 2020, U.S. Embassy in the Philippines is resuming certain immigrant and nonimmigrant visa services . . . .  While the Embassy aims to process cases as soon as practicable, there is likely to be increased wait times for completing such services due to substantial backlogs."); *see also* Defs.'-Resp'ts' Mem. at 3. Whitlock contends that he made several attempts to contact the consulate to resolve the matter, but these attempts proved to be unsuccessful.  *See* Compl. ¶ 22.  Throughout 2021, operations at the Embassy in

Manila remained limited or suspended.[2]  And even now, due to the ongoing pandemic "the

Embassy continues to operate with reduced staffing," limiting visa services.  *Visas*, U.S Embassy

in the Phil., https://ph.usembassy.gov/visas/ (last visited Jan. 28, 2022).

### C.  Procedural History

On March 25, 2021, Whitlock filed this suit.  *See* Compl.  Whitlock alleges that various

officers—including heads of the Department of State, DHS, and several subsidiary agencies

(USCIS and the Consulate to the Philippines)—violated the APA, 5 U.S.C. § 555(b) by

"refus[ing] to adjudicate [Sevilla's] application," causing "unreasonable delays under the INA

and the applicable rules and regulations."  Compl. ¶¶ 26, 29.  Further, Whitlock claims that

"[t]he combined delay and failure to act by Defendants has violated [Whitlock's] due process

rights" "protected by . . . the Fifth Amendment to the United States Constitution.  Compl. ¶¶ 33–

34.

The DHS defendants-respondents have moved to dismiss the case under Federal Rule of

Civil Procedure 12(b)(1) because they cannot provide relief to Whitlock.  *See* Defs.'-Resp'ts'

Mem. at 5–6.  The State Department defendants-respondents have moved to dismiss the case

---

[2] *See Visa Update: Consular Operations (Visas) as of March 2021*, U.S. Embassy in the Phil. (Mar. 15, 2021), https://ph.usembassy.gov/visa-update-consular-operations-visas-as-of-march-2021/ ("Routine visa services remain *suspended* due to precautions and limited resources related to the COVID-19 pandemic." (emphasis added)); *FAQs: K Fiancé(e) Visa Processing*, U.S Embassy in the Phil. (July 9, 2021), https://ph.usembassy.gov/faqs-k-fiancee-visa-processing/ ("Our number one priority is the safety of our applicants and our staff.  To allow for adequate social distancing, we have limited the number of visa applicants we can schedule for interview. We are finally in a position to interview a very *limited* number of K visas.  The backlog is large, so it will be a slow process, but we are eager to begin." (emphasis added)); *Visa Update: Consular Operations (Visas) as of August 2021*, U.S Embassy in the Phil. (Aug. 19, 2021), https://ph.usembassy.gov/visa-update-consular-operations-visas-as-of-august-2021/ ("Routine visa services remain *suspended* because of the COVID-19 pandemic." (emphasis added)); *Visa Update: Consular Operations (Visas) as of October 2021*, U.S. Embassy in the Phil. (Oct. 22, 2021), https://ph.usembassy.gov/visa-update-consular-operations-visas-as-of-october-2021/ ("Routine visa services remain *limited* because of the COVID-19 pandemic." (emphasis added)).

under Rule 12(b)(6) for failing to allege an agency action that has been unreasonably delayed. *See id.* at 6–7. These motions are now ripe for resolution.

## II.    LEGAL STANDARD

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss an action for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Federal law empowers federal district courts to hear only certain kinds of cases, and it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). When deciding a Rule 12(b)(1) motion, the court must "assume the truth of all material factual allegations in the complaint and construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged, and upon such facts determine [the] jurisdictional questions." *Am. Nat. Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (internal quotation marks omitted). But the court "may undertake an independent investigation" that examines "facts developed in the record beyond the complaint" in order to "assure itself of its own subject matter jurisdiction." *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005) (internal quotation marks omitted). A court that lacks jurisdiction must dismiss the action. Fed. R. Civ. P. 12(b)(1), 12(h)(3).

A federal court lacks such jurisdiction if the plaintiff does not establish standing. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (noting that "[t]he party invoking federal jurisdiction bears the burden of establishing the[ three] elements" of standing) (citation omitted)). Indeed, "a showing of standing 'is an essential and unchanging" predicate to any exercise of our jurisdiction." *Fla. Audubon Soc. v. Bentsen*, 94 F.3d 658, 663 (D.C. Cir. 1996) (quoting *Lujan*, 504 U.S. at 560). The elements relevant here are the second and third— causation (traceability) and redressability. There must be a traceable causation between the

plaintiff's injury and the defendant's alleged action.  *See Lujan*, 504 U.S. at 560; *see also Fla. Audubon Soc.*, 94 F.3d at 663–64 ("Causation may thus be said to focus on whether a particular party is appropriate.").  The plaintiff must also establish that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Lujan*, 504 U.S. at 561 (internal quotation marks omitted); *see also Fla. Audubon Soc.*, 94 F.3d at 663–64 ("Redressability examines whether the relief sought, assuming that the court chooses to grant it, will likely alleviate the particularized injury alleged by the plaintiff.") (footnote omitted).  A plaintiff must establish causation and redressability separately for each defendant.  *See Garcia v. Stewart*, 531 F. Supp. 3d 194, 205 (D.D.C. 2021) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 335 (2006)).

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss the complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A facially plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This standard does not amount to a specific probability requirement, but it does require "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*; *see Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").  A complaint need not contain "detailed factual allegations," but alleging facts that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility."  *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

Well-pleaded factual allegations are "entitled to [an] assumption of truth," *id.* at 679, and

the court construes the complaint "in favor of the plaintiff, who must be granted the benefit of all

inferences that can be derived from the facts alleged," *Hettinga v. United States*, 677 F.3d 471,

476 (D.C. Cir. 2012) (internal quotation marks omitted).  The assumption of truth does not apply,

however, to a "legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal

quotation marks omitted).  "Threadbare recitals of the elements of a cause of action, supported

by mere conclusory statements, do not suffice." *Id.*  Ultimately, "[d]etermining whether a

complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing

court to draw on its judicial experience and common sense." *Id.* at 679.

III.   ANALYSIS

   A.  Appropriate Defendants

Whitlock names a host of defendants, but only two—the Secretary of State and the

Chargé D'Affaires—are appropriate here.  The DHS defendant-respondents have not caused

Whitlock's injury and cannot remedy his situation.   DHS has already approved Sevilla's Form I-

129F, Compl. ¶ 19; Defs.'-Resp'ts' Mem. at 1, and transferred the case to the State Department,

where it remains today, *see* Defs.'-Resp'ts' Mem. at 2; Joint Status Report at 2, Dkt. 9.  Once

this transfer occurred, DHS no longer had a role to play in Sevilla's application. *See Visas for*

*Fiancé(e)s of U.S. Citizens*, U.S. Citizenship & Immigr. Servs., https://www.uscis.gov/family/

family-of-us-citizens/visas-for-fiancees-of-us-citizens (last updated Mar. 23, 2018).  The State

Department alone is responsible for approving applications for interviews, which are then

conducted by the U.S. embassy in Manila. *Id.* (under *Process for Bringing your Fiancé(e) to the*

*United States*, *Step 2: Visa Application – DOS*).  It is the job of the consular officer—and not

anyone from DHS—to render a decision on Sevilla's visa application. *Id.*; *see also Saavedra*

*Bruno v. Albright*, 197 F.3d 1153, 1156 (D.C. Cir. 1999) ("The INA confers upon consular

officers exclusive authority to review applications for visas . . . .").

Even assuming that Whitlock suffered an injury-in-fact from a "failure to act on . . .

Sevilla's immigrant visa application," Compl. ¶ 29, this injury is not fairly traceable to DHS.

DHS completed its role in processing Sevilla's application eighteen months ago.[3]  Compl. ¶ 19;

Defs.'-Resp'ts' Mem. at 1–2.  Thus, any injury suffered by Whitlock cannot be attributed to

these defendants-respondents.  And for the same reasons, this Court cannot grant Whitlock any

relief against DHS that will "alleviate the particularized injury alleged," *Fla. Audubon Soc.*,

94 F.3d at 663–64; *see also W. Coal Traffic League* v. *Surface Transp. Bd.*, 998 F.3d 945, 951

(D.C. Cir. 2021) ("[Redressability] inquiry normally overlaps with causation, since correcting

the conduct that causes an injury typically solves the problem."); *Dynalantic Corp. v. Dep't of

Defense*, 115 F.3d 1012, 1017 (D.C. Cir. 1997) ("Typically, redressability and traceability

overlap as two sides of a causation coin.").

Whitlock does not address DHS's remaining role, or lack thereof, in adjudicating

Sevilla's application.  *See* Pl.'s Opp'n at 7–8.  Instead, he offers two reasons why this Court can

redress his alleged injuries.  First, Whitlock points to the requested relief, which includes

"attorney's fees, legal interests and costs pursuant to the Equal Access to Justice Act."  *Id.* at 8.

But Whitlock's "interest in attorney's fees is . . . insufficient to create an Article III case or

---

[3] In a similar case denying a petition for a writ of mandamus, this Court found standing against
DHS (and USCIS) because those agencies may reconsider visa petitions after they have been
processed.  *See Zaman* v. *DHS*, No. 19-cv-03592, 2021 WL 5356284, at *4 (D.D.C. Nov. 16,
2021).  It did so, however, without addressing the imminence requirement of standing.  The mere
chance of DHS reconsidering an already-processed petition does not rise to the level of a
"certainly impending threat" to establish standing.  *See Clapper v. Amnesty Int'l USA.*, 568 U.S.
398, 409 (2013) (citation omitted); *see also Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905,
919 (D.C. Cir. 2015).

controversy where none exists on the merits of the underlying claim." *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 480 (1990)) (alteration in original); *Diamond v. Charles*, 476 U.S. 54, 70–71 (1986) ("[T]he mere fact that continued adjudication would provide a remedy for an injury that is only a byproduct of the suit itself does not mean that the injury is cognizable under Art. III.").

Second, Whitlock claims that Sevilla's application was not properly adjudicated. *See* Pl.'s Opp'n at 8.  DHS completed its processing of Sevilla's application in August 2020, six months after Whitlock filed the Form I-129F.  Compl. ¶¶ 17, 19; Defs.'-Resp'ts' Mem. at 1–2. Although Whitlock alleges that all of the defendants improperly adjudicated the visa application, *see* Compl. ¶¶ 26–29; Pl.'s Opp'n at 8, he makes no factual allegations as to how DHS improperly performed its role in the visa adjudication, *see* Compl. ¶¶ 23–31; Pl.'s Opp'n at 7–8. "[S]tanding is not dispensed in gross" and must be demonstrated for each claim against each defendant. *UMC Development, LLC v. District of Columbia*, 401 F. Supp. 3d 140, 150 (quoting *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017)).  And a merely conclusory statement alleging wrongdoing is insufficient to establish standing.[4]  *See Williams v. Lew*, 819 F.3d 466, 472 (D.C. Cir. 2016) ("[S]uch conclusory statements and legal conclusions are insufficient to state a plausible basis for standing . . . ."); *Am. Library Ass'n v. FCC*, 401 F.3d 489, 496 (D.C. Cir. 2005) (holding that "general averments [and] conclusory allegations" are not enough to establish standing).  Because Whitlock has not established standing against these

---

[4] Whitlock's claim of improper adjudication fails for a second reason. Whitlock's complaint did not allege that Sevilla's visa application was not properly adjudicated, but that it had not been adjudicated *at all*.  *See* Compl. ¶ 29 (alleging a "failure to act" and a "failure . . . to adhere to their legal duty" by the defendants).  Whitlock cannot raise a new claim for the first time in his opposition brief.  *See Williams v. Spencer*, 883 F. Supp. 2d 165, 181 n.8 (D.D.C. 2012) (collecting cases).

defendants, the Court lacks jurisdiction over the claims against them.  Accordingly, the Court

will dismiss the claims against the DHS defendant-respondents for lack of subject-matter

jurisdiction.

### B.  Unreasonable Delay

Whitlock further asserts that the State Department defendants-respondents have

unreasonably delayed the adjudication of his fiancée's visa, thereby violating the APA.[5]  *See*

Compl. ¶ 29.  The APA requires that an agency "conclude a matter presented to it" "within a

reasonable time."  5 U.S.C. § 555(b).  If it does not, a reviewing court must "compel agency

action unlawfully withheld or unreasonably delayed."  *Id.* § 706(1).

To evaluate whether an agency's delay is unreasonable, this Circuit employs a six-factor

test.  *Telecomms. Rsch. & Action Ctr. v. FCC* (*TRAC*), 750 F.2d 70, 80 (D.C. Cir. 1984).  Those

factors are:

> (1) the time agencies take to make decisions must be governed by a rule of reason;
> (2) where Congress has provided a timetable or other indication of the speed with
> which it expects the agency to proceed in the enabling statute, that statutory scheme
> may supply content for this rule of reason;
> (3) delays that might be reasonable in the sphere of economic regulation are less
> tolerable when human health and welfare are at stake;
> (4) the court should consider the effect of expediting delayed action on agency
> activities of a higher or competing priority;
> (5) the court should also take into account the nature and extent of the interests
> prejudiced by delay; and
> (6) the court need not find any impropriety lurking behind agency lassitude in order
> to hold that agency action is unreasonably delayed.

---

[5] Whitlock seeks relief under both the APA and the Mandamus Act.  *See* Compl. ¶ 11.  But his
mandamus claim relies on the State Department's delay being unreasonable under the APA.
*Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 96 (D.D.C. 2020); *Didban v. Pompeo*, 435 F. Supp.
3d 168, 177 (D.D.C. 2020); *Khan v. Blinken*, No. 21-cv-1683, 2021 WL 5356267, at *4 (D.D.C.
Nov. 17, 2021).  Accordingly, the Court analyzes these claims together. *See Khan*, 2021 WL
5356267, at *3; *Zaman*, 2021 WL 5356284, at *5–8; *Ghadami v. DHS*, No. 19-cv-00397, 2020
WL 1308376, at *5–10 (D.D.C. Mar. 19, 2020); *Skalka v. Kelly*, 246 F. Supp. 3d 147, 152–55
(D.D.C. 2017)

*In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 549 (D.C. Cir. 1999) (internal

quotation marks omitted) (quoting *TRAC*, 750 F.2d at 80).  These factors "are not 'ironclad,' but

rather are intended to provide 'useful guidance in assessing claims of agency delay.'" *In re Core*

*Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (quoting *TRAC*, 750 F.2d at 80).

Although the Court will consider all six factors, two factors dominate the analysis here:

the first and the fourth.  The first factor, which considers the reasonability of the delay, is the

"most important." *Core Commc'ns*, 531 F.3d at 855.  This factor requires an account of "the

resources available to the agency" and "cannot be decided . . . by reference to some number of

months or years beyond which agency inaction is presumed to be unlawful." *Mashpee*

*Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003).

Despite the first factor's importance, it may weigh less than the fourth factor: whether the

petitioner's proposed remedy would do no more that propel the plaintiff ahead of others,

judicially "reordering agency priorities." *See In re Barr Labs., Inc.*, 930 F.2d 72, 75–76 (D.C.

Cir. 1991) (refusing to grant relief when the fourth *TRAC* factor weighed against the petitioner—

even though all other factors favored it—because "a judicial order putting [the petitioner] at the

head of the queue simply moves all others back one space and produces no net gain").  Indeed,

the fourth factor can carry substantial weight, so substantial as to be dispositive, even if all other

factors cut against it. *See id.* at 76; *Mashpee*, 336 F.3d at 1100–01(citations omitted) (reiterating

that a court may deny a petitioner relief for an agency's delay if the fourth factor weighs against

the petitioner, even when all other *TRAC* factors favor the petitioner); *Tate v. Pompeo*, 513 F.

Supp. 3d 132, 149 (D.D.C. 2021) (finding that the fourth factor "often carries significant weight"

and holding that it "conclusively favor[ed] defendants' position" (citing *Mashpee*, 336 F.3d at

1100)), *appeal dismissed*, No. 21-5068, 2021 WL 3713559 (D.C. Cir. July 22, 2021); *Milligan v.*

*Pompeo*, 502 F. Supp. 3d 302, 319 (D.D.C. 2020) ("This factor carries the greatest weight in many cases, and it does so here."), *appeal dismissed*, No. 21-5017, 2021 WL 4768119 (D.C. Cir. Sept. 21, 2021); *Mohammad v. Blinken*, No. 20-cv-03696, 2021 WL 2866058, at *6 (D.D.C. July 8, 2021) ("This factor alone may be enough for the Court to reject [the petitioner's] unreasonable delay claims." (citing *Mashpee*, 336 F.3d at 1100)).

1. *Factors 1 and 2: The rule of reason*

The first two factors, often considered together, *see, e.g.*, *Tate*, 513 F. Supp. 3d at 148; *Milligan*, 502 F. Supp. 3d at 317; *Khan*, 2021 WL 5356267, at *3, favor the defendants-respondents.  As the parties acknowledge, *see* Defs.'-Resp'ts' Mem. at 7; Pl.'s Opp'n at 9, Congress has not imposed deadlines for fiancé(e) visas.  *Accord Skalka*, 246 F. Supp. 3d at 153–54 ("First, there is no deadline or timeframe prescribed by Congress for these investigations. To the contrary, Congress has given the agencies wide discretion in the area of immigration processing." (citing *Arpaio v. Obama*, 797 F.3d 11, 16 (D.C. Cir. 2015))).  "Absent a congressionally supplied yardstick," caselaw guides the Court's interpretation.  *Tate*, 513 F. Supp. 3d at 148 (quoting *Sarlak v. Pompeo*, No. 20-cv-35, 2020 WL 3082018, at *6 (D.D.C. June 10, 2020)).  Caselaw suggests that while five or more years may be unreasonable, shorter delays are not.  *See, e.g.*, *Khan*, 2021 WL 5356267, at *3–4 (finding that a delay in the adjudication of a fiancée visa that was less than two years to be reasonable); *Schwartz v. DHS.*, No. 21-cv-378, 2021 WL 4133618, at *3 (D.D.C. Sept. 10, 2021) (same); *Siwen Zhang v. Cissna*, No. CV 18-9696-MWF, 2019 WL 3241187, at *5 (C.D. Cal. Apr. 25, 2019) (collecting cases).

The State Department has taken eighteen months to process Sevilla's application and schedule an interview with her.  *See* Defs.'-Resp'ts' Mem. at 1–2; Pl.'s Opp'n at 3.  Such a delay

is not unreasonable, particularly given the circumstances.  To calculate the length of the delay,

the Court measures from August 2020, when DHS sent Sevilla's application to the State

Department, *cf. Bagherian*, 442 F. Supp. 3d at 95 (regarding a delay over processing a waiver

eligibility, the court calculated the delay from the date that the State Department denied a

fiancé(e) visa application and began considering a waiver eligibility), until today, *id.* at 94

("[T]he roughly twenty-five-month delay *to this point* in adjudicating her waiver eligibility is not

unreasonable.") (emphasis added).  Here, the State Department assigned a case number to

Sevilla's case after DHS purportedly finished processing Sevilla's application on August 11,

2020, *see* Compl. ¶ 19; Defs.'-Resp'ts' Mem. at 2, approximately eighteen months ago.

*Compare Bagherian*, 442 F. Supp. 3d at 94 (calculating the delay until the present day), *with*

*Primeaux v. DHS*, No. 21-cv-480, 2021 WL 4940938, at *3 & n.1 (D.D.C. Oct. 22, 2021)

(calculating the delay until the filing of the lawsuit but acknowledging that even if the delay ran

until the present day, the nineteen-month delay would not be unreasonable).  Under the *Primeaux*

court's calculation, the State Department's delay was only eight months, reasonable by most any

measure.  But even by the longest possible calculation, from February 2020 (when Whitlock

filed Form I-129F with DHS, a separate agency from the one now in charge of Sevilla's

application) until today, the delay would be twenty-four months.  That, too, is likely reasonable

in normal conditions, let alone in a global pandemic.  *Cf. Bagherian*, 442 F. Supp. 3d at 96

(finding a twenty-five-month delay reasonable for a waiver adjudication for a fiancée's visa

application *before* the pandemic); *Shen v. Pompeo*, No. 20-cv-1263, 2021 WL 1246025, at *8

(D.D.C. Mar. 24, 2021) (finding that the first two factors favored the Government because the

plaintiff—who had his interview at a U.S. Embassy *before* the pandemic—filed his action "less

than a year after submitting his application," and it had been "approximately twenty-one months

14

since that date").  Still, the Court finds the most reasonable calculation is somewhere in between:

from the time that the State Department received Sevilla's case until now.  This eighteen-month

delay is well within reason.

Regardless of the calculation, Whitlock argues that delays of over one year can be found

unreasonable, *see* Pl.'s Opp'n at 9, yet he relies on cases that all involved delays exceeding two

years.  *See id.* at 9–10.  Whitlock also concedes that Congress has not set a deadline for

processing visas.  *Id.* at 9.  Further, COVID-19 dramatically slowed (and for a time, stopped) the

State Department's processing of visas.  *See* Defs.'-Resp'ts' Mem at 3–4, 8–9.  That slowdown

led to a backlog of visa applications.  *Id.* at 4.  With such a backlog and only a gradual

resumption of its operations under pandemic precautions, the Department's eighteen-month

delay is reasonable.

### 2.   *Factors 3 and 5: Prejudice of health, welfare, and other interests*

Factors three and five concern the "health and welfare . . . at stake" and "the interests

prejudiced by delay."  *TRAC*, 750 F.2d at 80.  These factors, also often considered in tandem,

*see, e.g.*, *Didban*, 435 F. Supp. 3d at 177; *Khan*, 2021 WL 5356267, at *3; *Primeaux*, 2021 WL

4940938, at *3, mildly favor the Whitlock, at best.  Undoubtedly, long-term separation from a

loved one diminishes a person's welfare, but Whitlock provides no explanation of how this delay

has impacted him or Sevilla besides stating that the "delay has harmed his . . . family."  *See* Pl.'s

Opp'n at 11.

And, unlike in pre-pandemic circumstances, here it is appropriate to consider the health

of interviewees and interviewers under these factors.  Forcing government agents and visa

applicants to converse in-person, face-to-face, in regions with varying rates of viral, respiratory

outbreaks would put health and welfare at stake.  *See Tate*, 513 F. Supp. 3d at 150 (considering

15

the COVID-19 pandemic, but nonetheless concluding that factors three and five weighed in favor

of the plaintiff).  Given the evident health concerns, this Court will not override an agency's

reasonable policy choice.  The State Department has gradually resumed operations "on a post-

by-post basis," *see* Defs.'-Resp'ts' Mem. at 3, and has slowly resumed operation in Manila, *see*

*FAQs: K Fiancé(e) Visa Processing*, U.S Embassy in the Phil. (July 9, 2021),

https://ph.usembassy.gov/faqs-k-fiancee-visa-processing/.  This is a reasonable, to be sure.

Accordingly, the Court finds that, to the extent this factor weighs in favor of Whitlock, it does so

in only a minor way.  *See Mohammad*, 2021 WL 2866058, at *6.

### 3.  Factor 4: The agency's competing priorities

The fourth factor weighs strongly in favor of the defendants-respondents.  This factor

considers the effect of prioritizing one agency action over others.  *See TRAC*, 750 F.2d at 80.  In

directing agencies which tasks to prioritize, courts are slow to intervene, particularly if such

intervention would move the petitioner to "the head of the queue" and "simply move[] all others

back one space." *Barr Labs.*, 930 F.2d at 75–76 ("In short, we have no basis for reordering

agency priorities. The agency is in a unique—and authoritative—position to view its projects as

a whole, estimate the prospects for each, and allocate its resources in the optimal way. Such

budget flexibility as Congress has allowed the agency is not for us to hijack.").  Such is the case

here.

Yet Whitlock does not address this reordering of applicants or agency priorities.  *See* Pl.'s

Opp'n at 10.  Instead, he says that the defendants-respondents "should not be permitted to

penalize Mr. Whitlock for the delays facing Defendants generally." *Id.*  That argument assumes,

though, that the Embassy's delay is abnormal—which it is not—and minimizes the

circumstances the defendants-respondents currently face with processing visas.  *See* Defs.'-

Resp'ts' Mem. at 3–4 (noting a 72.5% year-over-year reduction between January 2020 and

January 2021 in visas issued worldwide); *see also Khan*, 2021 WL 5356267, at *4  ("The

COVID-19 pandemic reduced the Government's visa-processing capacity by nearly 90% for

several months in 2020, resulting in 'an extraordinary backlog of visas across the world.'"

(citation omitted)).  The relief Whitlock requests "would simply reorder a queue of applicants

seeking adjudication."  *Tate*, 513 F. Supp. 3d at 149 (internal quotation marks omitted).  As the

*Khan* court found, visa "[p]rocessing capacity is presently a zero-sum game, and granting

Plaintiff's request to expedite would necessarily mean additional delays for other applicants—

many of whom undoubtedly face hardships of their own."  2021 WL 5356267, at *4 (citation

omitted).

Again, this factor alone can control, *see Barr Labs.*, 930 F.2d at 76, but here, the Court

need not determine whether its weight is controlling or not—it merely adds to the scales already

tipped in the defendants'-respondents' favor.

4.   *Factor 6: Impropriety irrelevant here*

Courts in this district are split on how to consider the sixth factor when, as here, the

petitioner does not allege impropriety, *see* Pl.'s Opp'n at 11.  Some find the sixth factor to be

irrelevant in such circumstances.  *See, e.g.*, *Bagherian*, 442 F. Supp. 3d at 96 n.4 ("The sixth

*TRAC* factor, relating to whether agency impropriety is behind the delay, is not relevant here:

[The plaintiff] does not allege that the government had improper motivations for delaying

adjudication."); *Mirbaha v. Pompeo*, 513 F. Supp. 3d 179, 186 (D.D.C. 2021) (same); *Palakuru*

*v. Renaud*, 521 F. Supp. 3d 46, 53 (D.D.C. 2021) (same).  Others find that the lack of

impropriety weighs in favor of the defendants-respondents.  *See, e.g.*, *Tate*, 513 F. Supp. 3d at

150 ("[T]he good faith of the agency in addressing the delay weighs against' relief."  (quoting

17

*Liberty Fund, Inc. v. Chao*, 394 F. Supp. 2d 105, 120 (D.D.C. 2005))).  The Court need not

resolve this debate because treating it as neutral will not change the result.

*          *          *

Taken together, the *TRAC* factors heavily favor the defendants-respondents.  *See Sarlak*,

2020 WL 3082018, at *6 (collecting cases concluding the same).  The State Department has not

unreasonably delayed in processing Sevilla's application and scheduling her interview for

eighteen months.  Accordingly, Whitlock's APA claim fails and his Mandamus Act claim with

it.  *See Bagherian*, 442 F. Supp. 3d at 96 (rejecting a plaintiff's mandamus claim for the same

reasons the Court rejected the plaintiff's APA claim); *Ghadami*, 2020 WL 1308376, at *9–10

(same).

### C.  Due Process Claim

Lastly, Whitlock alleges that the "Defendants' combined failures to provide a reasonable

and just framework of adjudication in accordance with applicable law" has violated the Due

Process Clause of the Fifth Amendment.  Compl. ¶ 33.  To succeed on this claim, Whitlock must

allege a "a liberty or property interest of which a person has been deprived" and that the

procedures used by the Defendant were constitutionally insufficient.  *See Swarthout v. Cooke*,

562 U.S. 216, 219 (2011).  Whitlock's claim fails at both steps of this analysis.  First, "numerous

courts in this district have ruled that a U.S. citizen has no constitutional right which is violated

by the denial of a spouse's visa application.  *See Mahmood v. DHS*, No. 21-cv-1262, 2021 WL

5998385, at *9 (D.D.C. Dec. 20, 2021); *see also Singh v. Tillerson*, 271 F. Supp. 3d 64, 71

(D.D.C. 2017) ("[W]hile the Constitution protects an individual's right to marry and the marital

relationship, these constitutional rights are not implicated when a spouse is removed or denied

entry to the United States.").  Second, as discussed above, there is nothing unreasonable, let

18

alone unlawful, about the defendants'-respondents' process for adjudicating visa applications under the current circumstances.  Accordingly, the Court rejects Whitlock's due process claim.

## CONCLUSION

For the foregoing reasons, the Court will grant the defendants'-respondents' motion to dismiss.  A separate order consistent with this decision accompanies this memorandum opinion.

DABNEY L. FRIEDRICH
United States District Judge

February 11, 2022